The first case this morning is number 087094, Gaines v. DVA, Mr. Baines. Thank you, Your Honor. May it please the Court. Your Honor, this case this morning is a lost records case, in our opinion. The government has argued vehemently that it is not, but in their argument, they argue that, they assert that it is receipt, not presentment that is the key fact, or that is the veteran's responsibility in this matter. What we say is in looking at section 5107, the applicable statute regarding what the veteran's responsibility is, only requires proof of presentment. There is evidence in the record, and it is rife with it, corroborated and plausible, But they say evidence is not proof, is it? Well, in this instance, we believe there is proof. We believe there is clear and convincing proof, Your Honor. And when you look at the applicable cases cited by the government and in our brief, the evidence does rise to that level. I'm just saying to pursue this clear and convincing because there was no contradiction? Well, not only that, because the government cited the Ampro case, and we'll rely on that as what clear and convincing means in this instance. What you have is a corroborated statement. In the Ampro case, the statement was found not to be clear and convincing because it was both uncorroborated and implausible. But in this instance, we have a corroborated statement. We have a statement by the veteran that he submitted the notice of disagreement in 1988, and we also have a statement by his wife that it was submitted, and a statement by a third party. But that sounds like a fact question as to whether the evidence was sufficient or not, which is not something that we can get at. Well, no, Your Honor, I don't agree that it's a fact question. I believe the analysis in Cromer is appropriate in this instance because what was written in that case is if a presumption does not apply and an adverse inference or a heightened duty to explain applies, then remand to the board for reassessment of the evidence is appropriate. So the court in that case found that in looking at whether the presumptions apply or whether an adverse inference applies, you have to look through to see if the tests are met. I'm not sure it stands for that. We do have jurisdiction to decide whether using the presumption of regularity under these circumstances is appropriate or not. Yes, Your Honor, and we assert that it is not. Why wouldn't the fact that you have a 10-year hiatus and a presumption of regularity come into play? After 10 years, the VA took no action. Wouldn't it be reasonable for a person to contact the VA during that time period and say, where is my application? Why haven't you acted on my application? Well, he did contact the VA, Your Honor, and there were various points in the process where he did. But this is a person you have to understand. When was the first time you contacted the VA after you didn't hear from him? Well, the letter in 1999 was the first written time that we have record of. But prior to that, what other indication or record is there of any contacts? Well, other than the evidence that was put forward in the hearing, there isn't anything else. So what you have here, but you have to understand that this is a person with PTSD. So this is a veteran, and we are imposing on that person the obligation to not only keep a copy of everything, but also follow up and make sure that his rights are met. Now, I think we're displacing whose obligation this is in this instance. Once the NOD is presented to the government or to the VA in this instance, it is their obligation to ensure it gets in the file. It is not the veteran's obligation to ensure that it is placed in the government's file. No, of course not. But the presumption of regularity is that if they receive the Notice of Disagreement, that they would have put it in the file. And so the fact that there's nothing in the file is an indicator that it wasn't received. Well, that might indicate that, but if you have somebody saying that we did present it, and then you have cooperating evidence in that instance, and it is certainly plausible in that instance that someone might have received it in their office and not put it in the file. That's not implausible at all. So what you have here, if you follow the standards of AMPRO and decide whether this presumption or whether the clear and convincing evidence is there to rebut the presumption or to make it inapplicable, then you have an argument here and you have proof here that meets that level. It is at least necessary that the heightened duty applies because in that instance you have a question whether there are lost records at all. What happened here in both the board and the court is that they really didn't look at it that way. They just said, well, because it's not in the file, we're going to presume that it's not there and we're really not going to discuss. Did they presume it or are you telling us that because of the special circumstances and the statutory obligation with respect to veterans, no presumption should be drawn on either side, the total absence of any record shouldn't be considered when in fact the only evidence we have is the veteran saying I did it? Well, that's not the only evidence, Your Honor, but it is. What else is there? There is the corroborating evidence that his brother acted. There's the statement that corroborates that he did submit it. So there's a statement by the veteran and his wife and then there's a corroborating statement. So this is not the instance where it's just the word of the veteran and I'm not sure how we got to the point where we don't even accept that, but in this instance we have an obligation by the government once they receive the NOD to put it in the file. And so what we're applying here is a presumption that basically eliminates any possibility that a veteran could overcome that presumption if it's not placed in the file. I don't know that the Court of Appeals for Veterans Claims said that or that the board said that. They seem to recognize that the presumption could be overcome under some circumstances and just that the evidence here wasn't sufficient to overcome it. Isn't that what they said? Well, they didn't discuss it in the same manner that the court would have addressed it at AMPRO, Your Honor. I mean, in that case the court would have gone through an analysis of basically whether it was plausible, whether it was credible, and also whether it was corroborated. Now, all those elements exist here and then there would be an analysis most likely from what we assert because that would trigger a lost records type case where you would look at other evidence outside the file to determine whether it might have been misplaced or something of that nature. But, Mr. Baines, doesn't that really become a factual determination that we can't get into? Well, not exactly, Your Honor. I mean, in the Cromer case there were a lot of tenets or elements that were discussed in terms of whether the presumption applied or not. So when you're trying to figure out whether the presumption applies or not, you certainly have to get into facts. Our point here is that the facts you have to get into they didn't get into below at all. So consistent with what you wrote in Cromer, it is necessary to go through an analysis and if the board did not go through that analysis to determine whether the presumption is adverse inference or the heightened duty applies, then remand is appropriate to make them do that. We're not asking the court to do that here. What's wrong with the statement of the standard, the presumption and the ability to rebut it that's described at page five of the Court Appeals for Veterans Claims opinion? They say there's a presumption that to rebut it you have to provide clear evidence of the contrary and the board didn't err in finding that there wasn't clear evidence here. I mean, what's the legal error in that statement of the law? Well, the legal error is that when you go through the analysis of what triggers or what satisfies each presumption, that doesn't exist here. In the Butler case... I don't understand what you're saying. They say there's a presumption that can be rebutted by clear evidence. What's the matter with that statement? Well, you have to first decide whether it is the veteran's obligation here. When you're talking about the presumption of regularity, there's a presumption there that you're talking about what the veteran has an obligation to do. Now, when you're looking at... and I know Butler says that many of the procedural obligations apply to the veteran, but when the veteran presents the NOD, then what is supposed to happen? Is the veteran supposed to go back behind and check to see that the NOD got in the file? I don't think so. I think that elevates the statutory responsibility beyond what the veteran's obligation is. And at that point, you have to hold the VA accountable for their statutory responsibility, which is placing it in the file. So if it's not in the file, it's not the veteran's fault that it's not there. And it's not something that the veteran has any control over. It's not like the case where the veteran might receive an NOD, and Butler is a very good example of that, where he got the notice but not the appeal rights, and it triggered an additional duty to inquire. Here, he did not know that the VA did not place it in the file. He took it there, they gave it to the VA representative at the regional office, and then what they did with it, we don't know. What is wrong with the legal conclusion that the court drew that the presumption of regularity cannot be rebutted by the benefit of the death doctrine? Is that a wrong statement? Well, I think in this context, you have to look at both of those doctrines to see which one applies. It's not really correct to say whether one rebuts the other. You've got a circumstance here, though, where you decide whether it's the veteran's responsibility or the government's responsibility. So you're not also arguing that because the potential witnesses here are dead, the brother and the person that presumably the document was delivered to, that that should affect the balance between the presumption of regularity and the benefit of the doubt? Well, we're not going to abandon that either. But it is something that you have to look at in total, Your Honor. And our point here is that that wasn't done. It was just assumed that it didn't exist and no analysis into the various presumptions and adverse inferences was really done just simply because it wasn't in the file. But when you look at all the circumstances and you decide, and the court decides below that, it's not clear evidence because it's not in the file and we're not going to believe what the veteran and anyone associated with him says, that's not really appropriate. When you look at the Ampro case and you look at, okay, well, what would it take to be clear evidence in this case to apply that presumption? Then you look at whether it's cooperated, whether it's plausible, and whether the people testifying were credible. There is nothing anywhere that says that the testimony was not credible. There is nothing anywhere that says that it's uncooperated, except when you read the opinion it would suggest that because they don't talk about it really. It would just suggest that it was the veteran's statement. And in the government's brief they suggest it's just the veteran's statement. And the cases relied upon just rely on the veteran's statement. But here we have a cooperated statement and a plausible scenario. And we have people that are not there. The VA can't rebut it. The VA does not, it stands unrebutted what the veteran has testified to. And you have, and the VA representatives that received it at the time are not there. All those circumstances gel together to give us a scenario where  And an adverse inference should be applied, especially whereas here there is certainly enough evidence to show that the record was lost. All right, let's hear from the government. Okay, Your Honor. Mr. Gaines. Ms. Kidmiller. Good morning, and may it please the Court. Mr. Gaines began his argument by saying that this is a lost records case in their opinion. However, the Board and the Veterans Court disagreed with that opinion. There's been no finding that this is a lost records case. Rather, the Veterans Court and Board properly determined that Mr. Gaines did not file a notice of disagreement and therefore a 1988 rating decision became final. What would you know? You're saying that they found that they didn't believe him, right? Well, they didn't phrase it in terms of a credibility determination, but rather But he says, I did it, my brother handed it to them. So they have to find they didn't believe him. Well, actually the record shows, the brother's statement says not that he handed the notice of disagreement to the regional office, but rather that he gave it to the Texas Veterans Commission, which is a service organization separate and apart from the regional office. Are you relying on where, assuming it was delivered, that it was given to the wrong person? I don't recall that in the opinion. No, and we don't need to rely on that fact. Just to clarify the record, when Mr. Gaines says that the evidence is uncontested, that he actually delivered it to the regional office, that's not in fact what the record showed. But in any event, the Veterans Court and the board found no clear evidence to rebut the presumption of regularity here. And that is the question whether Mr. Gaines' evidence, his statement, the statement of his wife, and the brother's written statement rise to the level of clear evidence is a question of application of law to fact that this court does not possess jurisdiction to review. What would be sufficient? What evidence would be sufficient to rebut the presumption of regularity? Well, it would certainly be a question for the board in the first instance. Just give me an example. Things that could make the case stronger would be if Mr. Gaines had a copy of the notice of disagreement that he allegedly filed, if somebody from the Veterans Service Organization had a copy, if he had or his service organization representative had contacted the VA sometime within the intervening nine years to inquire, if there were something in the VA's records which appeared irregular on their face. For example, a later letter that made a reference to an earlier letter from Mr. Gaines that then did not appear in the file. I mean, there are any number of things. And I'm not saying that any one of these alone would necessarily constitute clear evidence, but these are some of the other kinds of facts that might be apparent in another case. Here, this case is much more like those cases where the Veterans Court has said it's just the mere assertion of the veteran alone. Now, admittedly, he had his wife and his brother in addition, but the Veterans Court made clear that does not rise to the level of clear evidence. And again, that's an application of law to fact that falls outside this court's jurisdiction. Are you relying at all on the fact that it took him 10 years to request it again or to provide additional information and inquiries? Well, not directly because, again, that goes to the underlying factual circumstances. Well, VA sometimes does take that long in replying to letters too, but you can't be relying on that. I'm sorry, I didn't hear you. You can't be relying on the time period between the original filing, the alleged filing, and the subsequent request as to what happened to the original filing. Well, it's part of the factual circumstances that we have here. The Veterans Court has looked at that kind of fact in other cases and used that as part of the explanation for why that particular evidence did not rise to the level of clear evidence, for example, in the Mindenhall case, which is a Veterans Court case. But again, that kind of factual evidence is something that the board or Veterans Court works with directly. What is wrong with the statement that was made by the Court of Veterans Appeals that presumption of regularity may not be rebutted by the benefit of the doubt doctrine? Is there anything wrong with that statement? No, absolutely not, Your Honor. And the Veterans Court's further explanation at the top of page 6 in the record makes perfect sense. It explains that the benefit of the doubt doctrine is applicable only where there's been an approximate balance of positive and negative evidence. In other words, benefit of the doubt doctrine can apply when the evidence is 50-50. Clear evidence, which is necessary to rebut the presumption, by definition is not 50-50. Well, here there was evidence that the wife indicated and the brother indicated, so there was no negative evidence except the lack of receipt by the VA. So why can't you balance those two factors? Because the analysis is within the framework of the presumption. So the presumption of regularity applies. We presume that had the notice of disagreement been filed, VA would have placed it in the claims file. To rebut that presumption, the claimant has the burden of presenting clear evidence to the contrary. So even assuming without conceding that the evidence the claimant presented was 50-50, that's not clear evidence to the contrary. In other words, evidence in equipoise is not somehow magically transformed into clear and convincing solely by benefit of the doubt doctrine. Does it have to be clear and convincing? Or can it be just saying that I mailed it in, my wife saw me mail it in, my brother saw me mail it in, and the VA never received it? That would not be clear and convincing evidence, or rather clear evidence. Is that a weight of the evidence? Does he need to get four more people to testify to the fact that he had mailed it in? Or is his wife and his brother insufficient evidence to indicate that he did mail it in? Well, again, that would be something, of course, for the board to determine in the first instance. In the Butler case, which was a decision of this court, the court observed that a mere assertion of non-receipt by the claimant is not clear evidence to the contrary. Now, here we had, in effect, more of the same, more mere assertions of delivery. It's not non-receipt. Here it's a little bit the opposite. But where the line is drawn, four people, ten people, one person, is really for the board to decide, but it is more of the same type of evidence. So you're saying then at that point it's a weight of the evidence and it's a question of law and fact. Yes, Your Honor. Which we cannot really weigh and review. Yes, that's right. Is that your best argument? Well, it's certainly a strong one, I think, because it goes to the court's jurisdiction. I mean, if the question were phrased a little bit differently, if the court were to decide it did have jurisdiction to look at the question whether, as a matter of law, a statement by a veteran and his wife and his brother is clear evidence to the contrary, then the only reasonable answer to that question is that no, as a matter of law, that cannot be clear evidence to the contrary. I mean, there's a question whether it's even 50-50. It doesn't have to be clear and convincing, does it? Is there just a scintilla of evidence that's necessary? No, it's clear evidence, and this court described that statement. What do we mean by clear evidence? Well, this court analogized it in AMPRO to the older language that was used was well-nigh irrefragable proof. And in AMPRO, this court explained that the clear evidence and well-nigh irrefragable proof are essentially one and the same. It's a good faith abiding conviction that a fact is highly probable. That's how the court described it in AMPRO. And while Mr. Gaines' evidence might raise an inference that perhaps the document here was lost, the presumption of regularity is a strong presumption. It's not simple to overcome. Could you help me understand the record a little bit better here? The brother said that he gave it to this service organization. Is the veteran and his wife saying that we gave it to the VA by having the brother give it to the veteran service organization, or did the veteran and his wife say that they gave it directly to the VA? Well, I think that the former is a more fair reading of the record. What page is the veteran's statement in? The veteran's testimony and his wife's spans pages 30. Well, the most important part is at page 35. It begins at page 31 of the record. At page 35 of the record, the veteran explains that the Temple VA hospital, quote, had a rep there at the time, and I think a fair reading of that is a service organization representative. Mrs. Gaines, further down on the page at 35, says that Mr. Roger, a guy in Temple VA, talked to my husband concerning the paperwork and stated, you know, they couldn't find it, but my husband was sent to Waco to talk to Mr. Roger, and then the veteran corrected, no, it was Eddie Eoff. Now, the brother's statement on page 21 says he gave the appeals papers to Eddie Eoff, who was a veterans counselor with the Texas Veterans Commission. So it could have been perhaps clearer, but I think it's certainly a fair reading of the record that it was delivered to the service organization. Which may in fact have happened, but that doesn't necessarily prove that the veterans service organization gave it to the VA, right? That's right. I mean, if it was in fact delivered, as Mr. Gaines' brother says, to the service organization, it may have been that the service organization failed to send it to the RO, and any number of things could have happened. But that would affect the benefit of the doubt doctrine. Wouldn't it? Because one of the things that's troubling about this opinion is that you say the benefit of the doubt doctrine doesn't even come into effect unless the evidence is in equipoise. So you're saying that all that that really would do might be to shift the burden of proof if in fact the veteran had the burden of proof. But if the evidence is in equipoise, and if the VA has the burden of proof on a particular issue, you don't need to invoke the benefit of the doubt doctrine if the evidence is in equipoise. And my perception is that what the legislators had in mind was to achieve more than possibly shifting the burden of proof when they said the veteran needs to be given the benefit of the doubt. Of course, it's hard to say how much doubt or how far it needs to go. But don't you think that the intention is to go beyond just a simple shift of the burden of proof if in fact the veteran had the burden of proof? No, and I have two responses to Your Honor's question. First, when rebutting the presumption of regularity, the first question has to be whether the veteran has presented clear evidence to the contrary. I wasn't talking about the presumption of regularity. I was asking you about the benefit of the doubt doctrine. Well, then this court explained in the Butler decision, and this is at page 1340 of that decision, that a reading of 5107B, which is the benefit of the doubt rule, indicates that it speaks to the evidentiary matters going to the merits of a benefit claim, not to the procedural responsibilities of the veteran. So my first response would be that there's an initial question whether the benefit of the doubt rule is even applicable to this kind of question, the filing of a notice of disagreement. You asked about Congress's intent, and I think that Congress's intent was certainly to make it easier for a veteran to prove the merits of the claim, the entitlement to benefits. So once VA has done its duty to assist and gathered all of the evidence and it spreads out all of the evidence relating to the merits of the claim before it, if that evidence is an equipoise, the VA will then find in favor of the veteran. That's a very different kind of setting. So there's no shift in the burden. The burden is always on the veteran when dealing with the VA? No, Your Honor. Now, the veteran does, though, bear the burden of demonstrating jurisdiction. And here, a notice of disagreement is what the veteran has to file for jurisdictional purposes to start the appeals process. The merits of the claim and where the benefit of the doubt rule has the most applicability is a different setting. I'm not trying to say that the claimant always bears the burden in that setting. That's not the case. But are you saying that the benefit of the doubt rule never applies to the filing of documents? It only applies to the weight of the documents and the weight of the evidence that has to be given once it's filed? I don't know if I'm ready to go. If I'm comfortable saying never so broadly. But we do have guidance. That's where you're headed, isn't it? Well, we do have guidance. The guidance from Butler is that the benefit of the doubt rule does not speak to, this is, again, quoting from the same page, it speaks to the presumption of, I'm sorry, neither paragraph, that's 51-7A or B, the benefit of the doubt rule. What page are you on in Butler? I'm at the end of page 1340 in Butler. It's the last full paragraph before page 1341. And the court explained that the benefit of the doubt paragraph does not speak to the presumption of regularity with regard to a procedural matter, such as the mailing of a notice relating to an appeal. Notice of disagreement, a little bit different than mailing of a notice of relating to an appeal, but it's certainly close enough to the situation that we have here. Presumption of regularity and an argument about the benefit of the doubt rule. So it's applicable only in a substantive sense of weighing the evidence and not the procedural aspects of whether or not a document has been filed? Yes, I think that's an accurate summary. Yes, Your Honor. That's your position? Yes. Rightfully or wrongfully? For better or worse. And certainly, again, on the facts of this case, it's clear that. Well, your argument is not just your position. Your argument is that's what we held in Butler. Well, that's right. That's right, Your Honor. Okay, I think we're out of time. Are there any more questions for Ms. Kidmiller? Thank you. Okay, thank you, Ms. Kidmiller. Mr. Baines, you have some time. Just to follow up, Your Honor, did you agree that the evidence of the record shows only that this was delivered to a representative of a veteran's service organization? I don't agree with that, Your Honor. Well, where is the testimony that was directly given to the VA? Well, the testimony about that issue, I think, is something that wasn't really addressed by the Board below. They just assumed that it was given to the VA. I'm asking you a question. Where is the testimony that says it was given directly as opposed to testimony that was given to the veteran's service organization? Well, Mr. Baines testified that he gave it to the VA. Who Mr. Eddie Eoff is I don't think was ever really established very well. I thought it was established that that was the guy at the veteran's service organization. Well, everyone is saying that it might be the veteran's service organization. I think that's an analysis for the Board to consider. When we're talking about who actually got it, where he sat, how close he was to the other VA people there, I think all that analysis is something that the Board did not do below. So when you're talking about whether the VA actually was in a position to receive it. Is there something in the record that shows that Mr. Eoff works for the VA as opposed to the veteran's service organization? No, Your Honor. There's not anything like that. Okay. But when we're looking at whether the benefit of it, I just want to follow up on the benefit of the doctrine just for a moment. When you're looking at 5107 and when you're looking at Butler, the way we read those decisions is that it looks at what the veteran's responsibility is. In this case, it was to present it. It wasn't to place it in the file. And when you're looking at the benefit of the doctrine itself, it does not limit itself to merely procedural responsibilities or evidentiary responsibilities. It says all information. And in this case, where we have an instance that was the VA's responsibility, it is incumbent, we believe, to apply that doctrine and to remand this to the Board for consideration of all the facts that we've discussed here today. Any more questions? Any more questions? Okay. Thank you, Mr. Baines, and thank you, Ms. Kidney. The case is taken under submission. Thank you, Your Honor.